UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

PHI INC.                              CIVIL ACTION NO. 6:18-cv-01491

VERSUS                                JUDGE JUNEAU

AERO PROPULSION SUPPORT,              MAGISTRATE JUDGE HANNA
INC.

## REPORT AND RECOMMENDATION

Pending before this Court is the motion to dismiss, which was filed by the defendant, Aero Propulsion Support, Inc. (Rec. Doc. 6). Aero Propulsion argued that the case should be dismissed under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction and further argued that the case should be dismissed under Fed. R. Civ. P. 12(b)(6) because the plaintiff's claims are prescribed. This Court converted the Rule 12(b)(6) motion to a motion for summary judgment so that materials extraneous to the complaint could be considered. (Rec. Doc. 18). The parties were given an opportunity to submit evidence or additional briefing following the conversion, but nothing further was submitted. The motion is opposed, and oral argument was held on May 15, 2019. The motion was referred to the undersigned magistrate judge for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of this Court. Considering the evidence, the law, and the arguments of the parties, and for the reasons fully explained below, it is recommended that the motion should be denied.

**Background**

In this lawsuit, PHI, Inc. seeks to recover from Aero Propulsion Support, Inc. for the loss of PHI's helicopter bearing Registration No. N4999.  On June 3, 2016, the helicopter was in flight near Mountain City, Tennessee when it allegedly produced a loud "bang" sound, accompanied by a left yaw and rapidly increasing measured gas temperature.  The helicopter lost engine power, and the pilot performed a hard emergency landing in a parking lot.  One passenger sustained minor injuries, and the helicopter was a total loss.

The National Transportation Safety Board ("NTSB") and the Federal Aviation Administration ("FAA") conducted an investigation, which revealed that the helicopter's engine contained a vane diffuser (Serial No. GY27720R) that had been overhauled by the defendant, Aero Propulsion Support, Inc., and shipped to PHI in Lafayette, Louisiana, where PHI installed it in the helicopter.

In connection with the NTSB and FAA's investigation of the incident, Rolls-Royce Corporation (the manufacturer of the helicopter's engine) conducted a metallurgical investigation of the vane diffuser.  In its Materials Evaluation Report dated July 27, 2016, Rolls-Royce concluded that a portion of the vane diffuser's aft

plate had separated near a braze joint[1] due to inadequate braze coverage between the components.  Rolls-Royce also found that the vane diffuser did not match Rolls-Royce's specifications for this part, which called for a single component rather than two components joined by brazing.  Rolls-Royce e-mailed its Materials Evaluation Report to the FAA on August 8, 2016 and, on August 25, 2016, Rolls-Royce e-mailed a copy of the report to Allan Slattery of Aero Propulsion and Mike Block of PHI.[2]  The NTSB issued its report on April 20, 2018.[3]

On November 15, 2018, PHI filed the complaint in this lawsuit, contending that the allegedly defective vane diffuser caused the incident.  PHI asserted claims against Aero Propulsion for redhibition, breach of contract, and attorneys' fees. Aero Propulsion responded to PHI's complaint by filing the instant motion.

## Contentions of the Parties

Aero Propulsion posited two theories supporting its motion for dismissal of PHI's complaint.  First, Aero Propulsion argued that the case should be dismissed under Fed. R. Civ. P. 12(b)(2) because the court lacks personal jurisdiction over it.

---

[1]     "Brazing joins two metals by heating and melting a filler (alloy) that bonds to the two pieces of metal and joins them." Machine Design, https://www.machinedesign.com/ fasterners/ whats-the-difference-between-soldering-brazing-and-welding (last visited April 11, 2019).

[2]     Rec. Doc. 6-2 at 18-19.

[3]     The report itself is undated.  In his declaration, however, Mike Block stated that the NTSB's investigation results were published on April 20, 2018.  (Rec. Doc. 16-1 at 6).

PHI argued to the contrary that Aero Propulsion's contacts with Louisiana are sufficient for specific jurisdiction. Second, Aero Propulsion argued that PHI's suit should be dismissed under Fed. R. Civ. P. 12(b)(6) because it was not filed within one year after Mr. Block learned about Rolls-Royce's report. PHI argued, however, that Mr. Block's knowledge of the content of Rolls-Royce's report was not attributable to PHI and that the suit was timely filed within one year after the completion of the NTSB investigation. The Rule 12(b)(6) motion to dismiss was converted to a motion for summary judgment.

## Law and Analysis

### A.   The Personal Jurisdiction Standard

Federal Rule of Civil Procedure 12(b)(2) requires a court to dismiss a claim if the court does not have personal jurisdiction over the defendant. Whether personal jurisdiction can be exercised over a nonresident defendant is a question of law.[4] "Personal jurisdiction is an essential element of the jurisdiction of a district court, without which it is powerless to proceed to an adjudication."[5] When, as in this case, a nonresident defendant challenges personal jurisdiction, the plaintiff, as the party seeking to invoke the power of the court, bears the burden of proving that jurisdiction

---

[4]     *Boullion v. Gillespie*, 895 F.2d 213, 216 (5th Cir. 1990).

[5]     *Guidry v. U.S. Tobacco Co*., 188 F.3d 619, 623, n. 2 (5th Cir. 1999).

exists.[6]  When the defendant's motion is decided without an evidentiary hearing, the plaintiff is required to present facts sufficient to constitute a *prima facie* case of personal jurisdiction to satisfy their burden.[7]  A *prima facie* showing of personal jurisdiction may be established by the pleadings, depositions, affidavits, or exhibits of record.[8]  The court must accept as true the party's uncontroverted allegations and resolve any factual conflicts in favor of the plaintiff.[9]  But the court is not required to credit conclusory allegations, even if left uncontroverted.[10]  If the court holds an evidentiary hearing, however, the plaintiff "must establish jurisdiction by a preponderance of the admissible evidence."[11]

---

[6]    *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006) (citing *Wyatt v. Kaplan*, 686 F.2d 276, 280 (5th Cir. 1982)).

[7]    *Central Freight Lines Inc. v. APA Transport Corp*., 322 F.3d 376, 380 (5th Cir. 2003); *Alpine View Co. v. Atlas Copco A.B.*, 205 F.3d 208, 214 (5th Cir. 2000).

[8]    *Guidry v. U.S. Tobacco Co*., 188 F.3d at 625.

[9]    *Central Freight Lines Inc. v. APA Transport Corp*., 322 F.3d at 380; *Stripling v. Jordan Production Co*., 234 F.3d 863, 869 (5th Cir. 2000); *Alpine View Co. v. Atlas Copco A.B.*, 205 F.3d at 215; *Guidry v. U.S. Tobacco Co*., 188 F.3d at 625.

[10]    *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001); *Felch v. Transportes Lar-Mex SA DE CV*, 92 F.3d 320, 326 n. 16 (5th Cir. 1996).

[11]    *In re Chinese Manufactured Drywall Prods. Liab. Lit*., 742 F.3d 576, 585 (5th Cir. 2014) (citing *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co*., 517 F.3d 235, 241-42 (5th Cir. 2008)).

In determining whether personal jurisdiction is proper, a district court sitting in diversity, as in this case, applies the law of the forum state in which it sits.[12]  The Louisiana Long-Arm Statute provides that this court may exercise personal jurisdiction over any nonresident so long as the basis for such jurisdiction is consistent with the United States Constitution.[13]  Consequently, the limits of the Louisiana Long-Arm Statue are coextensive with the limits of constitutional due process.[14]  This Court need only determine whether subjecting the defendant to suit in Louisiana would be consistent with the Due Process Clause of the Fourteenth Amendment.[15]

The exercise of personal jurisdiction over a nonresident defendant satisfies due process when:  (1) the defendant has purposefully availed itself of the benefits and protections of the forum state by establishing minimum contacts with that state, and (2) the exercise of jurisdiction does not offend traditional notions of fair play

---

[12]     *Companion Property and Cas. Ins. Co. v. Palermo*, 723 F.3d 557, 559 (5th Cir. 2013); *Paz v. Brush Engineered Materials, Inc*., 445 F.3d 809, 812 (5th Cir. 2006); *Pedelahore v. Astropark, Inc*., 745 F.2d 346, 347 (5th Cir. 1984)

[13]     La. R.S. 13:3201(B).

[14]     *Alonso v. Line*, No. 02-2644 (La. 05/20/03), 846 So.2d 745, 750, cert. denied, 540 U.S. 967 (2003); *Petroleum Helicopters, Inc. v. Avco Corp*., 513 So.2d 1188, 1192 (La. 1987).  Texas's long-arm statute is also coextensive with the federal constitutional limits of due process.  *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 482 (5th Cir. 2008). Therefore, Fifth Circuit cases regarding personal jurisdiction under that statute are equally applicable.

[15]     *Dickson Marine Inc. v. Panalpina, Inc*., 179 F.3d 331, 336 (5th Cir. 1999).  See, also, e.g., *Walk Haydel & Associates, Inc. v. Coastal Power Production Co*., 517 F.3d at 242-43.

and substantial justice.[16]    In other words, due process is satisfied when the defendant's connection with Louisiana is such that the defendant should reasonably anticipate being haled into court in Louisiana.[17]

PHI contends that the defendant's contacts give rise to specific, as opposed to general, jurisdiction.[18]    Specific personal jurisdiction exists when a nonresident defendant has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arose out of or related to those activities.[19]    Thus, specific personal jurisdiction requires a claim-specific inquiry,[20] and "only those acts which relate to the formation of the contract and the subsequent breach are relevant."[21]    This includes "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of

---

[16]    *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999).

[17]    *Latshaw v. Johnston*, 167 F.3d at 211.

[18]    Indeed, any contention that the defendant's contacts give rise to general jurisdiction would be insufficient based on the stringent requirements established by the Supreme Court in *Daimler AG v. Bauman*, 571 U.S. 117, 133-139 (2014).

[19]    *Walk Haydel & Associates, Inc. v. Coastal Power Production Co*., 517 F.3d at 243 (citing *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d at 868).

[20]    *Trois v. Apple Tree Auction Center, Incorporated*, 882 F.3d 485, 489 (5th Cir. 2018) (quoting *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009)).

[21]    *Trois v. Apple Tree Auction Center, Incorporated*, 882 F.3d at 489 (quoting *Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369, 375 (5th Cir. 2003)).

dealing."[22]    In other words, the specific jurisdiction analysis "focuses on the relationship among the defendant, the forum, and the litigation."[23]  When analyzing a claim arising from a contract, "only those acts which relate to the formation of the contract and the subsequent breach are relevant."[24]  "The 'minimum contacts' inquiry is fact intensive and no one element is decisive; rather the touchstone is whether the defendant's conduct shows that it 'reasonably anticipates being haled into court.'"[25]

The inquiry used to determine whether specific jurisdiction exists has three steps.  First, it must be determined whether the defendant has sufficient minimum contacts with the forum state or, in other words, whether the defendant has purposefully directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there.[26]  Random, fortuitous, or

---

[22]    *Trois v. Apple Tree Auction Center, Incorporated*, 882 F.3d at 489 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985)).  See also *Religious Tech. Ctr. v. Liebreich*, 339 F.3d at 375.

[23]    *Stuart v. Spademan*, 772 F.2d 1185, 1190 (5th Cir. 1985) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413 (1984) and *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)).

[24]    *Trois v. Apple Tree Auction Center, Incorporated*, 882 F.3d at 489 (quoting *Religious Tech. Ctr. v. Liebreich*, 339 F.3d at 375).

[25]    *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009) (quoting *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d at 470).

[26]    *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006) (citing *Nuovo Pignone, Spa v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002)).

8

attenuated contacts are insufficient,[27] but a single, substantial act directed toward the forum can support specific jurisdiction.[28]

Second, it must be determined whether the plaintiff's cause of action arose out of or resulted from the defendant's contacts with the forum.[29]  At this step, the proper focus in the analysis is on the "relationship among the defendant, the forum, and the litigation."[30]  This is a claim-specific inquiry, as "the Due Process Clause prohibits the exercise of jurisdiction over any claim that does not arise out of or result from the defendant's forum contacts."[31]

Finally, if the plaintiff satisfies the first two prongs, the burden shifts to the defendant to defeat jurisdiction by showing that the forum state's exercise of jurisdiction would be unfair or unreasonable.[32]  In this inquiry, a court analyzes five factors: "(1) the burden on the nonresident defendant, (2) the forum state's interests,

---

[27]  *Carmona v. Leo Ship Management, Incorporated*, ___ F.3d ___, 2019 WL 2067296, at *2 (5th Cir. 2019) and *Sangha v. Navig8 ShipManagement Private Limited*, 882 F.3d 96, 103 (5th Cir. 2018) (both quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. at 475).

[28]  *ASARCO, Inc. v. Glenara, Ltd*., 912 F.2d 784, 786 (5th Cir. 1990); *Dalton v. R & W Marine, Inc*., 897 F.2d 1359, 1361 (5th Cir. 1990); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 n. 18.

[29]  *Seiferth v. Helicopteros Atuneros, Inc*., 472 F.3d at 271 (citing *Nuovo Pignone, Spa v. STORMAN ASIA M/V*, 310 F.3d at 378).

[30]  *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 487 (5th Cir. 2008) (quoting *Calder v. Jones*, 465 U.S. 783, 788 (1984) ((in turn quoting *Shaffer v. Heitner*, 433 U.S. at 204)).

[31]  *Seiferth v. Helicopteros Atuneros, Inc*., 472 F.3d at 275.

[32]  *Seiferth v. Helicopteros Atuneros, Inc*., 472 F.3d at 271.

(3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies."[33]  "It is rare to say the assertion [of jurisdiction] is unfair after minimum contacts have been shown."[34]

In April 2018, the Fifth Circuit recognized that the circuit courts are divided with regard to the theory that a defendant is subject to personal jurisdiction in any state in which its product arrives after being placed into the stream of commerce.[35] The Fifth Circuit also confirmed that it adheres to the more expansive view, under which a plaintiff need only show that the defendant delivered the product that injured him into the stream of commerce with the expectation that it would be used by consumers in the forum state in order to establish personal jurisdiction.[36]

## B.    Aero Propulsion's Contacts with Louisiana are Sufficient to Establish Personal Jurisdiction

It is undisputed that Aero Propulsion is an Ohio corporation with its principal place of business in Ohio.  It is also undisputed that Aero Propulsion contracted with

---

[33]    *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d at 473.

[34]    *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 615 (5th Cir. 2008) (quoting *Wein Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999)).

[35]    *In re DePuy Orthopaedics, Incorporated, Pinnacle Hip Implant Product Liability Litigation*, 888 F.3d 753, 778 (5th Cir. 2018).

[36]    *In re DePuy Orthopaedics, Incorporated, Pinnacle Hip Implant Product Liability Litigation*, 888 F.3d at 778-79 (citing *Ainsworth v. Moffett Engineering, Ltd.*, 716 F.3d 174, 177 (5th Cir. 2013)).

PHI for the overhaul of vane diffuser GY27720R before it was installed in helicopter N4999.  In April 2014, PHI sent vane diffuser GY27720R to Aero Propulsion for overhaul.  Rather than waiting for that exact part to be overhauled and returned, however, PHI and Aero Propulsion agreed that Aero Propulsion would send to PHI a previously overhauled vane diffuser that was already in Aero Propulsion's pool of components.  GY27720R was eventually overhauled, and it was then placed in Aero Propulsion's components pool.  On August 25, 2015, PHI sent a repair order to Aero Propulsion along with a different vane diffuser that needed to be overhauled.  In accordance with their agreement, Aero Propulsion sent GY27720R back to PHI on October 16, 2015.  PHI then installed GY27720R in the Rolls-Royce engine in helicopter N4999.  Thus, it is undisputed that Aero Propulsion deliberately delivered the specific part that is alleged to have caused the helicopter to make an emergency landing to PHI in Louisiana in furtherance of the business arrangement between PHI and Aero Propulsion.

Aero Propulsion argued, however, that the transaction by which vane diffuser GY27720R was supplied to PHI "was not part of an ongoing, long-term relationship between PHI and Aero Propulsion." (Rec. Doc. 6-1 at 13).  Aero Propulsion argued that PHI would "occasionally contact[] Aero Propulsion to request repair or overhaul of a part, and if contacted by PHI, Aero Propulsion would enter into a transaction with PHI to overhaul or repair a part or to provide a previously overhauled or

repaired part. . . ." (Rec. Doc. 6-1 at 13).  But PHI presented contrary evidence.  PHI presented evidence establishing that it had a business relationship with Aero Propulsion that spanned fourteen years, from 2004 to 2018, during which PHI and Aero Propulsion were parties to 314 commercial transactions for parts and services for which PHI paid Aero Propulsion approximately $594,237.[37]  This Court finds that the relationship between PHI and Aero Propulsion went far beyond a single contract and was the type of long-term, ongoing relationship that might lead Aero Propulsion to anticipate being haled into court in Louisiana.  More importantly, however, the lawsuit arose out of a specific transaction between PHI and Aero Propulsion.

It is well settled that a nonresident's contracting with a resident of the forum state, standing alone, is insufficient to subject the nonresident to the jurisdiction of the forum state.[38]   Rather, a court must evaluate "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing. . . in determining whether the defendant

---

[37]      Rec. Doc. 16-1 at 3-4.

[38]      *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 344 (5th Cir. 2004); *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007); *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986).

purposefully established minimum contacts within the forum."[39]   Under this approach, the Fifth Circuit has looked to certain factors that include:  (1) the place of contracting and (2) the place where the contract was to be performed,[40] (3) whether the contract contains an arbitration or choice-of-law clause,[41] and (4) whether the defendant's officers visited the forum state.[42]

Aero Propulsion argued that this case should be decided in accordance with *Holt Oil & Gas Corp. v. Harvey*[43] and *Stuart v. Spademan*,[44] in which the Fifth Circuit found that personal jurisdiction was lacking.  While both of those cases involved contracts between the plaintiff and defendant, neither was a case in which an item that was repaired by the defendant in one state was shipped to the plaintiff in another state then malfunctioned, causing harm.

---

[39]     *Pervasive Software Inc. v. Lexware GMBH & Co. KG*, 688 F.3d 214, 223 (5th Cir. 2012) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. at 479).

[40]     *Jones v. Petty-Ray Geophysical Geosource, Inc*., 954 F.2d 1061, 1069 (5th Cir.1992).

[41]     *Halliburton Energy Services, Incorporated v. Ironshore Specialty Insurance Company*, 921 F.3d 522, 542 (5th Cir. 2019) ("Choice-of-law provisions and forum-selection clauses are relevant to this minimum-contacts analysis, but they are not dispositive."); *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 481 F.3d at 313.

[42]     *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 481 F.3d at 313; *Hydrokinetics, Inc. v. Alaska Mechanical, Inc*., 700 F.2d 1026, 1029 (5th Cir. 1983).

[43]     *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773 (5th Cir. 1986).

[44]     *Stuart v. Spademan*, 772 F.2d 1185 (5th Cir. 1985).

This case is more similar to *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*[45] There, Corchran, a company with its operations in Minnesota, manufactured component parts of systems sold by another company, Donaldson, to a company in Texas called Ruston.  Although Corchran did not have an office or a sales representative in Texas, the contract that it entered into made it clear that the parts it was manufacturing would be sold by Donaldson to Ruston in Texas.  Further, Corchran shipped parts directly to Ruston in Texas 211 times between 1977 and 1992.  The Fifth Circuit found that Corchran had minimum contacts with Texas and the exercise of personal jurisdiction over Corchran in Texas did not offend fair play and substantial justice.

The Fifth Circuit has stated that "[w]here a nonresident's contact with the forum state stems from a product, sold or manufactured by the foreign defendant, which has caused harm in the forum state, the court has [specific] jurisdiction if it finds that the defendant delivered the product into the stream of commerce with the expectation that it would be purchased or used by consumers in the forum state."[46] This Court has previously applied this principle, ruling that minimum contacts were established when a company knew that a pump it manufactured was purchased by a

---

[45]     *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415 (5th Cir. 1993).

[46]     *Nuovo Pignone. SpA v. STORMAN ASIA M/V*, 310 F.3d at 380 (internal quotation marks omitted) (quoting *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 374 (5th Cir. 1987)).

Louisiana company, and shipped to Louisiana where it malfunctioned and caused injury, stating:  "There is no doubt that Western delivered the Predator Pump into the stream of commerce with the knowledge that it would ultimately end up in Louisiana.  Moreover, additional contacts are unnecessary because this single purposeful contact of putting the Predator Pump in the stream of commerce destined for delivery in Louisiana is sufficient to confer personal jurisdiction because plaintiff's cause of action arises from that single contact."[47]

This case presents a virtually identical fact pattern except for two important differences.  First, Aero Propulsion did not simply offer its product for sale in the stream of commerce.  Instead, it contracted with PHI to repair or overhaul the vane diffuser and then ship it to Louisiana.  The vane diffuser was deliberately sent to Louisiana and only to Louisiana.  Second, Aero Propulsion's delivery of the vane diffuser to PHI was not an isolated incident.  Aero Propulsion has been doing business with PHI for over a decade.  In accordance with that long-term business relationship, this was neither the first nor the only product that Aero Propulsion delivered to PHI in Louisiana.  When this particular overhauled vane diffuser left Aero Propulsion's plant in Ohio, Aero Propulsion knew as a matter of fact that the product was going to be delivered to this one specific user in Lafayette, Louisiana.

---

[47]    *Roman v. Western Manufacturing, Inc.*, No. 07-1516, 2008 WL 11337007, at *4 (W.D. La. Apr. 23, 2008).

Therefore, Aero Propulsion could reasonably have anticipated that if the product failed and caused an injury, the company could be haled into court in Louisiana. "It is not unfair or unjust to require the manufacturer of a good that is knowingly delivered to a specific state to respond to a lawsuit arising out of defects in the good in that state. Therefore, the second prong of the due process test is satisfied; the exercise of personal jurisdiction over [the manufacturer] in [the remote state] does not offend fair play and substantial justice."[48]

This Court therefore finds, first, that Aero Propulsion had sufficient contacts with Louisiana to anticipate having to litigate claims arising from its repair of the product in this state and, second, that exercising personal jurisdiction over Aero Propulsion and subjecting Aero Propulsion to litigation in Louisiana does not offend constitutional due process protections.

## C.    The Motion for Summary Judgment Standard

Although Aero Propulsion originally raised the issue of the timeliness of PHI's claims in a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, this Court converted the motion to a motion for summary judgment so that evidence beyond the four corners of the complaint could be considered.[49] The

---

[48]    *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d at 421.

[49]    Rec. Doc. 18.

parties were afforded an opportunity to submit additional evidence or briefing following the conversion, but neither did so.

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law.  A fact is material if proof of its existence or nonexistence might affect the outcome of the lawsuit under the applicable governing law.[50]  A genuine issue of material fact exists if a reasonable jury could render a verdict for the nonmoving party.[51]

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion and identifying those parts of the record that demonstrate the absence of genuine issues of material fact.[52]  If the moving party carries its initial burden, the burden shifts to the nonmoving party to

---

[50]    *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986); *Sossamon v. Lone Star State of Tex*., 560 F.3d 316, 326 (5th Cir. 2009); *Hamilton v. Segue Software, Inc*., 232 F.3d 473, 477 (5th Cir. 2000).

[51]    *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. at 252; *Hamilton v. Segue Software, Inc*., 232 F.3d at 477.

[52]    *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

demonstrate the existence of a genuine issue of a material fact.[53]   All facts and inferences are construed in the light most favorable to the nonmoving party.[54]

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that there is insufficient proof concerning an essential element of the nonmoving party's claim.[55]   The motion should be granted if the nonmoving party cannot produce evidence to support an essential element of its claim.[56]

**D.   Was PHI's Suit Timely Filed?**

In its complaint, PHI asserted claims for redhibition, breach of contract, and attorneys' fees.   The complaint reads as follows:   "On April 20, 2018 the NTSB released its Factual Report; and, for the first time, PHI learned that the cause of the engine failure was due to the fact that Aero Propulsion improperly repaired the helicopter's vane diffuser, S/N GY 27720R.   The defective vane diffuser, including the work performed on that system by Aero Propulsion, was the direct, proximate[,] and producing cause of the damages incurred by PHI as a result of the incident in

---

[53]      *Washburn v. Harvey*, 504 F.3d at 508.

[54]      *Brumfield v. Hollins*, 551 F.3d at 326 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)).

[55]      *Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d 409, 412 (5th Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. at 325).

[56]      *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

18

question." (Rec. Doc. 1 at 2). Thus, PHI contends that, by filing suit in November 2018, it filed suit less than one year after it allegedly learned that the vane diffuser was the cause of the incident. Under Louisiana law, an action for redhibition prescribes one year after a buyer discovers a defect in the product he purchased,[57] and a breach of contract claim has a ten year prescriptive period.[58] Therefore, PHI alleged that its suit was timely.

In support of its contention that the suit prescribed before it was filed, Aero Propulsion presented two arguments. First, Aero Propulsion argued that PHI's breach of contract claim was actually a tort claim with a one-year prescriptive period. Second, Aero Propulsion argued that PHI filed suit more than one year after learning that the vane diffuser caused the accident.

Aero Propulsion argued that PHI was actually asserting a tort claim rather than a contract claim because PHI's claim should be interpreted as a claim for negligent performance of repair work under Louisiana Civil Code Article 2316. If so, the claim would be subject to a one-year prescriptive period.[59] In its briefing and at oral argument, PHI made it clear, however, that its breach of contract claim is based on Aero Propulsion's alleged breach of the warranty provisions set forth on the

---

[57]    Louisiana Civil Code Article 2534.

[58]    Louisiana Civil Code Article 3499.

[59]    Louisiana Civil Code Article 3492.

documentation related to the transaction by which Aero Propulsion overhauled the vane diffuser that was in the helicopter at the time of the crash.

How PHI acquired the vane diffuser is a little complicated. At some unknown point in time, PHI acquired a Rolls-Royce helicopter engine with a vane diffuser bearing Serial Number GY27720R already installed in it. On April 22, 2014, PHI sent Aero Propulsion its Repair Order No. RO-035558-2014, requesting that the vane diffuser with Serial No. GY27720R be overhauled.[60] Rather than waiting for that same vane diffuser to be repaired and returned, Aero Propulsion instead sent PHI a different vane diffuser from its inventory. This type of transaction is called a "core exchange." Later, when PHI sent a vane diffuser with Serial No. 330915 to Aero Propulsion to be overhauled, another core exchange occurred. This time, Aero Propulsion retrieved the vane diffuser bearing Serial No. GY27720R from its inventory or parts pool, and sent Serial No. GY27720R back to PHI on October 16, 2015.[61] A "Certificate of Conformance" reiterated that the vane diffuser bearing Serial No. GY27720R was exchanged for the vane diffuser bearing Serial No.

---

[60]    Rec. Doc. 6-2 at 13.

[61]    Rec. Doc. 6-2 at 5.

330915.[62]   The vane diffuser with Serial No. GY27720R was subsequently incorporated into an engine that was installed in the subject helicopter.[63]

The record does not contain a quotation from Aero Propulsion for any repair work to be done on Serial No. GY27720R at the time the overhaul was requested by PHI.  However, the record does contain a quotation for the repair work to be done on Serial No. 330915.[64]  The quotation contains a warranty in fine print.  This Court will draw the inference that an identical quotation was issued when Serial No. GY27720R was sent in to be overhauled, and that it included the same warranty language.  Furthermore, this Court finds that PHI's breach of contract claim is based on an alleged breach of the warranty issued by Aero Propulsion when the vane diffuser bearing Serial No. GY27720R was sent in to be overhauled.  This breach of contract claim had a ten-year prescriptive period.  It is undisputed that PHI filed suit less than ten years after the helicopter crash, less than ten years after the overhaul of the vane diffuser in the helicopter at the time of the crash, and less than ten years after it learned that the vane diffuser caused the crash.  Accordingly, Aero Propulsion failed to prove that any breach of contract claim asserted by PHI in this lawsuit was not timely.

---

[62]     Rec. Doc. 6-2 at 6.

[63]     Rec. Doc. 16-1 at 3.

[64]     Rec. Doc. 6-2 at 10.

To the extent that PHI may have asserted a claim with a one-year prescriptive period – whether under a redhibition theory or under a tort theory – genuinely disputed issues of material fact preclude summary judgment in Aero Propulsion's favor.

Following the helicopter crash, the NTSB initiated an investigation.  As a part of that investigation, Rolls-Royce conducted a materials analysis, which concluded that the vane diffuser caused the crash.[65]   Aero Propulsion contended that PHI learned that the vane diffuser caused the crash more than one year before suit was filed, supporting that argument with evidence in the form of e-mail correspondence from Jon Michael of Rolls-Royce to Mike Block of PHI and others, enclosing the pertinent laboratory analysis.[66]

It is undisputed that Mr. Block, a PHI employee, received a copy of the Rolls-Royce report by e-mail on August 25, 2016.  This was more than one year before the lawsuit was filed on November 15, 2018.  Mr. Block stated in an affidavit submitted by PHI, however, that he "participated in the investigation" of the helicopter crash.[67]  He further stated that was a party representative to investigations of accidents by the

---

[65]    Rec. Doc. 6-2 at 29-52.

[66]    Rec. Doc. 6-2 at 18.

[67]    Rec. Doc. 16-1 at 2.

22

NTSB on multiple occasions.[68]  More particularly, he stated that he "was a party representative for PHI for the incident in question, and participated in the NTSB investigation of this incident."[69]  Mr. Block additionally stated that he received Rolls-Royce's investigative report concerning the vane diffuser in his capacity as a party representative to the NTSB investigation[70] and consequently was statutorily prohibited from relaying the information in the report to PHI for the purpose of initiating litigation.[71]

   In support of its argument that Mr. Block's knowledge concerning the cause of the crash was not attributable to PHI, PHI cited to the Federal Aviation Regulations, 49 C.F.R. §§ 831.11 and 831.13.   Under those statutes, a party participating in an NTSB investigation may not be represented by a person who also represents claimants or insurers.[72]  Furthermore, information gained by a party representative during the NTSB investigation generally cannot be disseminated before the NTSB releases the information.[73]  Party representatives are required to

---

[68]     Rec. Doc. 16-1 at 4.

[69]     Rec. Doc. 16-1 at 5.

[70]     Rec. Doc. 16-1 at 5.

[71]     Rec. Doc. 16-1 at 4-6.

[72]     49 C.F.R. § 831.11(a)(3).

[73]     49 C.F.R. § 831.13(b).

certify that they understand that "[n]o party representative may occupy a legal position or be a person who also represents claimants or insurers" and that their "participation is not on behalf of either claimants or insurers."[74]  PHI submitted into the record copies of the certifications signed by Allan Slattery of Aero Propulsion,[75] Jon Michael of Rolls-Royce,[76] and Terry R. Myers of PHI Air Medical,[77] confirming that they were designated as party representatives for the subject accident and aware of the statutory conditions for their participation.   Their signed certifications expressly acknowledge that they are familiar with the relevant statutes and state that their participation was "not for the purposes of preparing for litigation."  Curiously, PHI did not submit such a certification for Mr. Block.  Thus, the only evidence that Mr. Block was PHI's party representative regarding the subject crash and therefore bound by the statutory limitations on the dissemination of information learned during the investigation of the crash is Mr. Block's own self-serving affidavit.

The NTSB released its factual report on April 20, 2018.  If indeed Mr. Block was PHI's representative in the NTSB investigation, then his knowledge concerning the defective vane diffuser cannot be attributed to PHI before that date.  Accordingly,

---

[74]      Rec. Doc. 16-1 at 21-23.

[75]      Rec. Doc. 16-1 at 23.

[76]      Rec. Doc. 16-1 at 21.

[77]      Rec. Doc. 16-1 at 22.

the evidence presented by PHI creates a genuinely disputed issue of material fact concerning whether PHI's claims that are subject to a one-year prescriptive period were timely filed.

In its complaint, PHI asserted claims for redhibition and breach of contract, alternatively alleging that the vane diffuser contained a redhibitory defect that was not discovered until after the incident and that Aero Propulsion breached its contract with PHI by failing to repair and overhaul the vane diffuser in a reasonable, workmanlike, and nondefective manner. To the extent that these claims are subject to a ten-year prescriptive period, they were asserted in a timely fashion. To the extent that these claims are subject to a one-year prescriptive period, genuinely disputed issues of material fact preclude summary judgment in Aero Propulsion's favor. PHI alleged in its complaint that it first learned that the vane diffuser contained a defect on April 20, 2018 when the NTSB released its factual report. Aero Propulsion argued, to the contrary, that PHI learned about the defendant in the vane diffuser when PHI's Mike Brock received a copy of Rolls-Royce's materials analysis report on August 25, 2016. This is a genuine issue of material fact that must be left to the jury to resolve. Accordingly, this Court recommends that Aero Propulsion's motion for summary judgment on the issue of prescription should be denied.

## Conclusion

For the foregoing reasons, it is recommended that Aero Propulsion's motion to dismiss (Rec. Doc. 6) should be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.[78]

Signed at Lafayette, Louisiana, this 16th day of May 2019.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE

---

[78]    See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), superseded by statute on other grounds, 28 U.S.C. § 636(b)(1).